IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN CRUMP,                              )
Y20690,                                    )
                                           )
                    Plaintiff,             )
                                           )
vs.                                        )
                                           )      Case No. 23-cv-1922-DWD
                                           )
JOHN DOE 2 (Menard parole processor),      )
WARDEN OF MENARD,                          )
JOHN DOES 5-6 (VIENNA RECORDS              )
DEPT. OFFICER),                            )
WARDEN OF VIENNA,                          )
                                           )
                    Defendants.            )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Steven Crump, a former inmate[1] of the Illinois Department of Corrections (IDOC), brought this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  (Doc. 17).  Plaintiff alleges that he was held at least 30 days beyond the expiration of his Mandatory Supervised Release (MSR).  He alleges that the Defendants were responsible for this extended period of detention, and he seeks monetary compensation for each day he spent detained beyond his MSR.  Upon initial review of his Amended Complaint, the Court allowed Plaintiff to proceed against John Doe 2, an officer whom he alleged he interacted with upon intake at Menard, and whom he alleged failed to remedy his sentence miscalculation.  Plaintiff was then allowed

---

[1] Plaintiff is now detained at a jail in Kansas.

to amend his complaint further to add claims against additional officials from Vienna Correctional Center (Vienna).  (Docs. 29, 30).  From December of 2023 to present, the parties have been engaged in an exchange of information designed to allow Plaintiff to discern the identity of the Doe defendants.  There have been controversies and hiccups in this process, and the matter is now before the Court on these issues, as well as Plaintiff's additional Motions to Amend (Docs. 58-60).

## Background and Motions

The Court initially designated a single operative claim in this case:

**Claim 1:** **Eighth Amendment deliberate indifference or Fourteenth Amendment substantive due process claim against John Doe 2 (head parole processor at Menard) for his role in holding Plaintiff 30 days beyond his MSR date from May 15, 2023, to June 15, 2023.**

(Doc. 21).

On December 6, 2023, the Court added the Warden of Menard to the docket sheet to identify John Doe 2 (head parole processor at Menard), it directed Plaintiff to file any information he had about John Doe 2 by January 5, 2024, and it indicated it would set additional steps once these things had occurred.  (Doc. 21).  Plaintiff complied (Doc. 27), and the Warden appeared on January 11, 2024.  Thus, on January 22, 2024, the Court directed the Warden to provide responsive information to Plaintiff about the identity of John Doe 2, and it indicated Plaintiff must move to substitute a named party by February 26, 2024.  (Doc. 36).  There is no indication from either side that anything further has occurred with regards to John Doe 2, and the deadlines have since passed.

Meanwhile, on December 26, 2023, Plaintiff filed a request to amend to add defendants, and on January 11, 2024, the Court issued a second order for service of process allowing him to proceed against Jane Does 1-4 and John Doe 5 (Vienna records department employee).  (Doc. 30).  The Warden of Vienna was added to the case, and Plaintiff was directed to file information about the identity of these parties.  Plaintiff complied.  (Doc. 39).  In his Notice, Plaintiff asked to dismiss Jane Does 1-4, and this request was granted.  (Doc. 40).  Instead, he asked to proceed against TWO John Doe records officers at Vienna, and he described them.  (Doc. 39).  The Court allowed this slight alteration, directed the Warden to respond by February 20, 2024, and directed Plaintiff to move for substitution by March 6, 2024.  (Doc. 40).  The Warden complied (Doc. 43).  Plaintiff sought additional information (Doc. 43), his request was granted (Doc. 45), and the Warden was directed to locate the additional information by April 10, 2024.  (Doc. 45).  The Warden complied (Doc. 52).  Plaintiff should have moved to substitute named parties by April 24, 2024, but instead other things have ensued.

On April 1, 2024, Plaintiff moved for sanctions.  (Doc. 46).  The following week he filed a Notice (Doc. 47) and a letter (Doc. 48).  He also moved to substitute defendants (Doc. 49) and filed another notice (Doc. 50).  In the Motion for Sanctions, Plaintiff alleges that the Wardens of Menard and Vienna have both obstructed his efforts to identify the Doe parties by intentionally indicating they do not know who he is talking about or cannot identify the people he speaks of.  (Doc. 46).  Despite alleging both wardens have acted equally, Plaintiff seeks $10,000 solely from John Barwick, the Warden at Vienna.  (*Id.*).  This Motion arrived just days after the Court had directed the Warden to undertake

further efforts to identify John Does 5 and 6, and less than two weeks before the Warden complied and supplied additional relevant information.  As such, there is no basis for sanctions because the Warden was actively participating in this matter and providing responsive information.  The Motion for Sanctions (Doc. 46) is **DENIED**.

In the Notice, Plaintiff opened by stating, "[i]t is ordered that John Barwick identify persons, not send calculation sheet."  (Doc. 47 at 1).  Plaintiff goes on to acknowledge the name of a male prison field services employee to plan his release date and transportation.  This employee, Mr. Larry Busby, allegedly told Plaintiff Menard staff should have taken care of things with his parole and release, but that the best he could do would be to schedule a release on May 15.  (Doc. 47 at 1).  Plaintiff argues his experience is not unique and is a form of systemic corruption, he goes on to make further factual and legal arguments about his experience, but a notice is not a way to add arguments to the case or to further pursue John Doe identification, so this Notice (Doc. 47) has no real implication in this case.  The four-page notice is accompanied by documents that appear to be records exchange in the John Doe identification process.

In the letter received April 10, 2024, Plaintiff states that he would like to add state law claims to the lawsuit, and he hopes to do so without filing an amended complaint. (Doc. 47).  This is not a proper way to amend a complaint under the Federal Rules of Civil Procedure or the Local Rules.  Under Federal Rule of Civil Procedure 15(a), a party may amend once without Court permission, and subsequent amendments require the Court's formal approval.  Though leave is often freely given, Plaintiff did not properly seek it via a motion for leave.  Plaintiff had already amended once in this case, so he needed leave

of Court for another amendment.  Additionally, per Local Rule 15.1(a)(1), an amended pleading must contain all claims against all parties, as if starting anew, and 15(a)(2) requires that all new material be underlined.  Plaintiff's letter does not meet these requirements.

The same day the Court received Plaintiff's letter, it also received a "Notice," (Doc. 50) which appears to contain the state law claims he referenced in his letter.  The document indicates an intent to file Illinois tort claims and lists 10 theories for relief.  It names all existing defendants, adds the Johnson County Board of Commissioners, and seeks damages for each claim.  However, the pleading makes no mention of the other claims, and from the contents of the letter it appears that Plaintiff hoped to add this as a piecemeal amendment, rather than filing a new complete pleading.  This approach is unacceptable under the local rules, so the claims have not been added to this lawsuit, and the Johnson County Board of Commissioners has likewise not been added.

On the same day, Plaintiff Moved to Substitute Defendants (Doc. 49), and he indicated that if John Barwick did not cooperate with John Doe identification, then he would simply substitute the "Field Services Supervisor" for John Doe 5, and the "Clinician Services Supervisor" for John Doe 6.  (Doc. 49 at 1).  He additionally indicated John Barwick has demonstrated negligence and deliberate indifference in his handling of John Doe identification because it is apparent that despite having day-to-day operational oversight of the prison, he does not actually have oversight of the facility and/or he is acting hostile towards the Court's orders.  He indicates he seeks to modify the included parties to have the Assistant Warden in his official capacity so that he can circumvent

Barwick for Doe identification.  He claims this is appropriate because the Assistant Warden played a close role in the underlying issues by denying his grievances on this subject while incarcerated.  In response to a grievance on the matter, he alleges the Assistant Warden told him the Warden was aware of things and there was no need for them to meet about the topic.  (Doc. 49 at 2).  Plaintiff claims this gave him the impression that the Warden was upstanding and would go the extra mile to resolve his situation.  In conclusion, Plaintiff moved to add the Assistant Warden of Vienna in official capacity.

The Court is not persuaded that this is a necessary or appropriate move.  The Notices of Compliance filed on the docket sheet by Warden Barwick's attorney demonstrate that he has complied with the Court's orders during the John Doe identification process, and the Court will not add another prison official to the mix.  If Plaintiff believes for some reason that he could ask questions of the Assistant Warden that would somehow identify the Does, he can present those specific queries to the Warden to be addressed.  Accordingly, the Motion to add the Assistant Warden is **DENIED**.  Additionally, the Court will not substitute the Field or Clinical Services supervisors because this nomenclature is no more specific that John Does 5 and 6.

On April 17, 2024, Plaintiff transmitted a Motion for Leave to Amend his Complaint (Doc. 58).  He claims he has newly discovered evidence, he wishes to add new defendants, and his original complaint did not sufficiently outline the parameters of his claims due to his inexperience with the law.  (Doc. 58 at 1).  The claims presented in the Second Amended Complaint will be analyzed below.

Plaintiff has also filed two additional Motions (Docs. 59, 60) in relation to his second amended complaint. In the first Motion, he again raises the issue of sanctions against John Barwick, arguing that Barwick has not been cooperative, and has intended to mislead him during the Doe identification process. Because of this, he claims he is still unsure if he is substituting the correct people for John Does 5 and 6, and he seeks to reserve the right to further modify those parties in the future. He also reiterates a variety of requests for monetary sanctions, and other remedial measures. Again, the Court is not persuaded that Barwick has been uncooperative or has otherwise failed to follow Court orders, so the Motion (Doc. 59) is **DENIED** in all respects. The second Motion (Doc. 60) seeks to adjust the damages amount to $1.5 million, from the $1.25 million presented in the amended complaint. Piecemeal modifications are not acceptable, so this Motion (Doc. 60) also **DENIED**.

<u>**The Existing Claims**</u>

At present, Plaintiff has been allowed to proceed on the following claims in this case:

> Claim 1: Eighth Amendment deliberate indifference or Fourteenth Amendment substantive due process claim against John Doe 2 (the head parole processing individual at Menard) for his role in holding Plaintiff 30 days beyond his MSR date from May 15, 2023, to June 15, 2023;

> Claim 2: Eighth Amendment deliberate indifference or Fourteenth Amendment substantive due process claim against John Does 5 and 6 for their roles in holding Plaintiff 30 days beyond his MSR date from May 15, 2023, to June 15, 2023.[2]

---

[2] On January 30, 2024, the Court allowed Plaintiff to proceed against John Does 5 and 6 (male records department employees at Vienna Correctional Center) in this Claim, instead of just John Doe 5, and it dropped Jane Does 1-4 at his request. (Docket entry 40). In Plaintiff's Amended Pleading (Doc. 29), he was

(Docs. 21, 30).

**<u>Second Amended Complaint (Doc. 58-1)</u>**

In the proposed Second Amended Complaint, Plaintiff names the following Defendants: the IDOC, John Barwick (official and individual capacities), Travis Wentworth (a record office supervisor), Naomi McGlone (an office administrator), Warden Anthony Wills (Warden of Menard in official capacity only), John Doe Menard Parole Processor, John Doe I.A. Commander Vienna Correctional Center (official capacity), John Doe Lieutenant #1, John Doe Lieutenant #2, John Doe Lieutenant #3. (Doc. 58-1 at 1-3). He also lists Counselor Busby, but unlike the other individuals mentioned, he does not mark Busby as a "defendant," and instead just indicates he was a witness to events that occurred. (Doc. 58-1 at 3).

Plaintiff explains he spent 1,437 days successfully of his "max" date of 1,460 days. (Doc. 58-1 at 2). He claims he was only supposed to serve 85% of his parole sentence, which would have meant his term was up in 1,310 days and would have ended his parole in December of 2023 or January of 2024. (Doc. 58-1 at 2, 4). Despite this, and despite his mother facing serious health complications in Kansas, he waited and repeatedly tried to get permission to go to Kansas to visit her. His request was rejected multiple times, but he ultimately claims he was patient and received permission to travel. Upon going to Kansas, he claims he was assigned a new parole officer who issued a warrant for his arrest. Believing it was the right thing to do, he immediately surrendered himself and

---

unequivocal in speaking of meeting face-to-face with just one male employee about the sentence miscalculation. (Doc. 29 at 2). In subsequent documents discussed above in this Order, Plaintiff referred to a face-to-face conversation with an individual named Larry Busby. (Doc. 47 at 1).

was eventually transported to Menard.  (Doc. 58-1 at 2, 4).  He claimed that at this time, he had satisfactorily completed all conditions of his parole and should not even have ben on parole any longer.  Plaintiff alleges that the supervisor who violated him did so with evil intentions and motives, and as a part of an IDOC policy, custom, or practice that allows and encourages IDOC employees to mistreat parolees and to attempt to entrap them in a violation.  (Doc. 58-1 at 4).

Plaintiff goes on about the policy, practice, or custom of IDOC that allows for the kind of situation he experienced.  (Doc. 58-1 at 5).  He claims that the parole board admitted he did nothing wrong, but also told them they could not reinstate him because his parole had expired.  They "exonerated" him, violated him, and indicated he would be out-processed at Vienna.  He alleges this chain of events was a further violative custom or policy of IDOC that requires individuals to wait to be processed out.  He explains this is cruel and unusual punishment, a due process violation, and caused him extreme emotional distress.  (Doc. 58-1 at 5).

While at Menard (April 18, 2023, to May 12, 2023), he claims he was denied all ability to communicate with family, the parole board did not know he was in custody, and the parole processor did not process his paperwork.  (Doc. 58-1 at 5).  He alleges he missed 6 parole boards due to these lapses.  On Friday, May 12, he claims Menard transported him to Vienna without informing Vienna of his situation in an attempt to cover-up the fact that they held him past his MSR.  He claims this was done with malicious intention and occurred due to a lack of oversight in IDOC.

Plaintiff further alleges Vienna staff immediately "went in on attempting to cover up his release date." (Doc. 58-1 at 6). He claims he wrote Warden Barwick, emergency grievances and letters to no avail. He faults Barwick for maintaining a failed procedure that places release responsibility on only a single employee, who was on a two-week vacation at the time he was eligible for release. He alleges Barwick failed to have employees cross-train such that someone could have processed his immediate release. (Doc. 58-1 at 6). He further alleges this is both a failure of Barwick to maintain order at Vienna, and a failure of IDOC to allow individuals to be held beyond max release dates.

Plaintiff further alleges Defendants Travis Wentworth and Naomi McGlone conspired to cover-up the fact that he was wrongfully imprisoned. He claims McGlone also failed to approve his phone list, would not provide him with requested addresses, and otherwise was slow to process various requests and grievances. (Doc. 58-1 at 7). He claims that once he was finally "exonerated" his time was still not calculated properly. He faults Wentworth and McGlone with adding one month and ten days to his sentence, and then crediting him days such that his release occurred on June 15, 2023, 30 days after his max release date. (Doc. 58-1 at 7).

Plaintiff describes this series of events as malicious and done without due process. He further claims he was kidnapped. He alleges IDOC, Menard's Warden, and Vienna's Warden are all responsible for the injuries caused by Wentworth and McGlone. He further alleges it is highly likely that Warden Barwick actually directed Wentworth and McGlone to act as they did on purpose. He alleges the conditions he was held under for

the extra 30 days in prison were "extreme," and resulted in life-altering mental disorders. (Doc. 58-1 at 9).

Plaintiff identifies 15 enumerated theories for relief, including state law claims, and *Monell* claims. (Doc. 58-1 at 8). He sought $1.25 million dollars (Doc. 58-1 at 10), but in his request to amend that, he seeks $1.5 million dollars (Doc. 60).

Based on the allegations in the Second Amended Complaint, the Court designates the following additional claims:

> **Claim 3:** ***Monell* claim against Defendants Anthony Wills (Warden of Menard) or John Barwick (Warden of Vienna) for their role in keeping Plaintiff in custody beyond his MSR date;**
>
> **Claim 4: Gross negligence or negligence against the Defendants for their roles in keeping Plaintiff detained beyond his MSR.**

Plaintiff's Second Amended Complaint (Doc. 58-1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Analysis

The Court acknowledges that Plaintiff's Second Amended Complaint presents many theories beyond the theories designated above as Claims 3 and 4. In fact, he

enumerates a total of 15 claims, including things like a conspiracy under § 1985, the intentional infliction of emotional distress, supervisory liability, fraud, assault and battery, and more.  The Court will briefly discuss each theory, beginning with those that are insufficient.  These claims are presented in a shotgun fashion, most of them with little to no explicit factual support.  Even if Plaintiff intended to provide factual support, many of these theories are inadequate.

In Claims 5 and 6, Plaintiff indicates an intent to pursue conspiracy claims under §§ 1985 and 1986.  The Seventh Circuit has held that the intracorporate conspiracy doctrine bars suits against prison officials working for the same entity.  *See e.g.*, *Greene v. Teslik*, 2023 WL 2320767, at *4 (7th Cir. Mar. 2, 2023 (non-precedential opinion) (the intracorporate conspiracy doctrine applies to large bureaucratic agencies like the department of corrections).  As such, Plaintiff's conspiracy claims may not proceed.

In Claim 7, Plaintiff alleges an intentional infliction of emotional distress (IIED) by all defendants.  To plead an IIED claim in Illinois, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended his conduct to cause severe emotional distress or was aware of a high probability of causing severe emotional distress; and (3) the defendant's conduct caused severe emotional distress.  *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008).  Plaintiff has not made it clear that the conduct at issue was extreme and outrageous, nor that the defendant's intended or suspected that it would cause him extreme harm.  As such, he has not alleged sufficient facts to sustain an IIED claim.

In Claim 9, Plaintiff faults John Barwick and Anthony Wills, the wardens, for supervisory liability, but there is no supervisory liability under § 1983, so a claim of this nature cannot proceed. *See e.g., Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (supervisory liability is not recognized under § 1983).

In Claims 10 and 11, Plaintiff mentions fraud by Naomi McGlone, Travis Wentworth and John Barwick, and a conspiracy to commit fraud. The elements of an Illinois fraud claim are: (1) a false statement of material fact; (2) known to be false by the person making it; (3) with the intent to induce the plaintiff to act; (4) plaintiff relied on the truth of the statement; and (5) damages resulted from such reliance. *See e.g., Fifth Third Mortgage Co. v. Kaufman*, 934 F.3d 585, 588 (7th Cir. 2019). Fraud must be plead with particularity. *See e.g., Cornielsen v. Infinium Capital Mgmt., LLC,* 916 F.3d 589, 598 (7th Cir. 2019). Particularity calls for a clear statement of the who, what, when, where and how, but malice, intent, knowledge, or a person's state of mind may be alleged more generally. *Id.* Plaintiff has not alleged a sufficient fraud claim or a conspiracy to commit fraud claim because he has not alleged that he was presented with information known to be false, with the intent to induce him to do something. Though he may allege that others were provided with false information about his release date, his allegations in this respect are conclusory and do not fit a fraud theory.

In Claims 12 and 15, Plaintiff alleges assault and battery and torture against all defendants, but this allegation is too ambiguous and there are no allegations that suggest specific threats of harm or actual physical harm at the hands of any named defendant.

In Claim 13, Plaintiff alleges kidnapping by Defendant Barwick and the IDOC, but kidnapping is a criminal offense under 720 ILCS 5/10-1 *et seq.*, not a civil cause of action. *See e.g., Ferguson v. Cook County, Illinois*, 2021 WL 3115207 at * 18 (N.D. Ill. July 22, 2021).

In Claim 14, Plaintiff alleges a Fourteenth Amendment due process violation, but this is duplicative of Claims 1 and 2 as already designated by the Court in this action, so this claim is unnecessary.

In addition to the analysis presented above, the Court acknowledges that Plaintiff named some additional individuals as defendants, including an "I.A. Commander" (Doc. 58-1 at 3) and three lieutenants whom he alleges all tried to assist him with his situation but failed. Given that Plaintiff does not identify a wrongdoing by these four individuals, his allegations may not proceed against them under § 1983.

Finally, the Court turns back to the allegations of Fourteenth Amendment due process violations or Eighth Amendment cruel and unusual punishment, which were the theories originally contemplated in this case by the Court's earlier Orders of Review (Docs. 21, 30). Initially, Plaintiff was allowed to proceed against a John Doe 2 "head parole processor" at Menard for Claim 1 (Doc. 21), and against John Does 5 and 6 for employees at Vienna (Doc. 30). Plaintiff still has not identified the John Doe 2, despite having a deadline to do so of February 26, 2024. (Docket entry 36). It appears that both the Warden of Menard and Plaintiff did not follow the Court's earlier directions at docket entry 36 about identifying John Doe 2, so the Court will afford additional time to accomplish these tasks as set forth below.

As for Claim 2, against John Does 5 and 6, Plaintiff expresses some hesitancy about his identification of these individuals, but ultimately he has identified these parties as Naomi McGlone and Travis Wentworth.  His allegations against these two are sufficient, so the Clerk of Court will be directed to substitute them for John Does 5 and 6 and to serve them.

Plaintiff now attempts to include Warden John Barwick in his individual capacity related to his prolonged detention at Vienna.  Plaintiff faults Barwick for maintaining a procedure at Vienna that authorized just a single employee to process inmate releases, an employee who was on vacation for two weeks at the time he was eligible for release.  He faults Barwick for failing to respond to any of his emergency grievances about his need for release, and more generally for failing to maintain order at Vienna.  He further alleges that Barwick directed McGlone and Wentworth to alter his max release date so that they could make it look as if he was released on time.  At this early juncture, these allegations are sufficient to proceed on the same theories as Claims 1 and 2.  Claim 2 already concerns Plaintiff's prolonged detention at Vienna, so Defendant John Barwick will be added in his individual capacity as a defendant for Claim 2.

Next, the Court addresses Plaintiff's expressed desire to initiate a *Monell* claim against Defendants Barwick, Wills, and/or IDOC.  IDOC itself is not a "person" subject to suit under § 1983, so IDOC is immediately subject to dismissal.  *See e.g., Sebesta v. Davis*, 878 F.3d 226, 231 (7th Cir. 2017) (the state or a state agency is not a person that can be sued under § 1983).  Additionally, a claim against a state official in his or her official capacity is a claim against the state itself, and § 1983 does not authorize awards of money

damages against states.  *See e.g., Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018).  At most, a plaintiff can seek injunctive relief against a state official in his or her official capacity, but Plaintiff has been released from IDOC already so there is no injunctive relief available for his policy claims against Barwick, Wills, or others.

This leaves Plaintiff's existing allegations in Claims 1 and 2 against John Doe 2, Travis Wentworth, Naomi McGlone, and John Barwick, and his state law allegations in his own newly added Claim 4 (gross negligence).  The Court will exercise supplemental jurisdiction over Plaintiff's Claim 4 and will allow this theory to proceed against Defendants John Doe 2, Wentworth, McGlone, and Barwick.

<u>Disposition</u>

**IT IS HEREBY ORDERED THAT,** Plaintiff's Motion to Amend (Doc. 58) is **GRANTED.  Claim 1** of the original complaint may still proceed against John Doe 2 (Menard Parole processor), **Claim 2** may proceed against Naomi McGlone, Travis Wentworth and John Barwick, and **Claim 4** may proceed against John Doe 2, McGlone, Wentworth, and Barwick.  All other claims, including **Claim 3** and Plaintiff's own state law claims are dismissed for failure to state a claim.  Plaintiff does not have valid claims against Defendants Anthony Wills (official capacity), John Barwick (official capacity), the IDOC, the I.A. Commander, Lieutenants 1-3 or Counselor Busby.  The Clerk of Court is **DIRECTED** to docket Document 58-1 as a Second Amended Complaint, but is also **DIRECTED** to **TERMINATE** Defendants IDOC, the I.A. Commander, Lieutenants 1-3 and Counselor Busby.

The Clerk of Court is **DIRECTED** to prepare for Defendants: John Barwick (individual capacity), Naomi McGlone and Travis Wentworth: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 58-1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.  **However, for purposes of this initial order, the Warden of Vienna is NOT required to file an answer to the complaint.  The Warden need only have counsel appear on his or her behalf, and then the Warden (via counsel)**

**must respond to Plaintiff's Notice about the identification of Jane Does 1-4 and John Doe 5.  These steps will be further guided once the Warden enters an appearance.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

Plaintiff's Motions (Docs. 46, 49, 59, and 60) are all **DENIED** for the reasons explained above.

Plaintiff shall have a final chance to identify John Doe 2.  To this end, the Warden of Menard is **DIRECTED** to review the docket text at entry 36 and to file a Notice of Compliance by June 17, 2024.  Plaintiff shall have until July 1, 2024, to move to substitute a named party for John Doe 2 or Claim 1 will be dismissed.

**IT IS SO ORDERED.**

Dated: May 15, 2024

/s David W. Dugan
_____
DAVID W. DUGAN
United States District Judge