# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN CRUMP, )<br>Y20690, )<br> )<br>     **Plaintiff,** )<br> )<br>vs. )<br> )<br> )<br> )<br>JOHN DOE 2 (Menard parole processor), )<br>WARDEN OF MENARD, )<br>JANE DOES 1-4, )<br>JOHN DOE 5 (VIENNA RECORDS )<br>DEPT. OFFICER), )<br>WARDEN OF VIENNA, )<br> )<br>     **Defendants.** ) | Case No. 23-CV-1922-DWD |

## **MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Plaintiff Steven Crump, a former inmate[1] of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff alleges that he was held at least 30 days beyond the expiration of his Mandatory Supervised Release (MSR). He alleges that the Defendants were responsible for this extended period of detention, and he seeks monetary compensation for each day he spent detained beyond his MSR. The Court has already reviewed three full complaints (Docs. 1, 17, 63) and numerous motions to amend (Docs.

---

[1] Plaintiff was detained for an alleged parole violation at the time he filed this lawsuit on June 1, 2023, but he now avers in his amended complaint that he was released on June 15, 2023. His current mailing address is that of a County Sheriff's Department in Kansas, which suggests he may be detained again.

29, 49, 58, 60). This matter is before the Court on yet another Motion to Amend (Doc. 78), that is accompanied by a 21-page amended complaint.

Plaintiff's proposed amendment (Doc. 78) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Background

After the Court found Plaintiff's initial complaint insufficient, Plaintiff filed a complaint that was allowed to proceed on a single claim against John Doe 2, the alleged head parole processor at Menard. (Doc. 21). At the time of service, the Court directed Plaintiff to file identifying information about this party, and then directed the Warden of Menard to respond to that information. After delays, on June 20, 2024, the Warden filed a Notice of Compliance wherein he indicated he was unable to identify the John Doe because Plaintiff was at Menard for such a short duration that he was not assigned a "parole processor." In support of this assertion, the Warden appended Plaintiff's placement log, which shows he was at Menard from April 20, 2023, through May 12, 2023. (Doc. 77-1). Plaintiff has responded to this statement via a Motion to Compel (Doc. 79),

which will be discussed later. Suffice it to say, the parties have not yet identified John Doe 2.

After the original Order for Service (Doc. 21), the Court allowed Plaintiff to add allegations against individuals at Vienna Correctional Center (Docs. 30, 40, 45, 62). These individuals were initially identified as Doe Defendants and were then substituted with named parties on May 15, 2024. (Doc. 62). The Court served Naomi McGlone and Travis Wentworth with the added claims.

At the same time that the Court served McGlone and Wentworth, it also conducted a substantive review of Plaintiff's proposed Third Amended Complaint (Doc. 63) and concluded that many of the claims were insufficient to proceed. Amongst those claims, the Court rejected allegations that the Wardens of Menard or Vienna (Anthony Wills or John Barwick) could be held liable for money damages in their official capacities for alleged policies or customs that lead to a violation of Plaintiff's rights under a *Monell* theory. (Doc. 62 at 15-16). Thus, per the Court's May 15, 2024, Order, the operative claims in the case are:

> Claim 1: Eighth Amendment deliberate indifference or Fourteenth Amendment substantive due process claim against John Doe 2 (head parole processor at Menard) for his role in holding Plaintiff 30 days beyond his MSR date from May 15, 2023, to June 15, 2023.
>
> Claim 2: Eighth Amendment deliberate indifference or Fourteenth Amendment substantive due process claim against Naomi McGlone, Travis Wentworth, and John Barwick for their roles in holding Plaintiff 30 days beyond his MSR date from May 15, 2023, to June 15, 2023.

      Claim 4:      Gross negligence or negligence against Defendants for their roles in keeping Plaintiff detained beyond his MSR.

(Doc. 62).

## The Motion to Amend and Proposed Complaint

In the Motion for Leave to Amend (Doc. 78), Plaintiff expresses a desire to add two John Doe officials from Menard, to reincorporate claims that were previously dismissed, and to "clarify or redefine claims." (Doc. 78 at 1). The proposed fourth amended complaint is 21-pages long, and includes constitutional claims, as well as those premised on state law. Plaintiff's pleading regurgitates information that has been presented and rejected in previous pleadings. He begins with what can only be considered background information[2] on his interactions with parole agents prior to his return to custody for a parole violation warrant in April of 2023.

After providing significant background about his experience on parole, Plaintiff alleges that in April of 2024 while in Kansas to visit his ailing mother, he attempted to "check in" for parole and learned there was a warrant for him, so he surrendered. He arrived at Menard on April 18, 2024, and spoke with a counselor and intake person who assured him he would be released on May 15, 2024, pending actions by the administration on his paperwork and his appearance before the board. He alleges Menard administration did nothing. (Doc. 78-1 at 8). He faults Defendant Anthony Wills (warden at Menard) for creating an environment of deliberate indifference where employees

---

[2] In the original complaint, Plaintiff included some of the parties discussed in this background section as defendants, but he has not listed them in the caption of this pleading, so the allegations about these parties are treated as background in this amended complaint. (Doc. 78-1 at 6-8).

lacked training, and his parole issue was allowed to languish. He claims that he was in isolation at Menard for 24 days (*Id.*), but also reports that he was put through a "prerelease" program that gave him information which made it seem he would be released on time.

Much to his chagrin, he was transferred to Vienna on Friday, May 12, 2024, just three days before his expected release date. (Doc. 1 at 9). There he learned the Menard administration had not done anything to process him, did not enter him into the system and did not inform the parole board that he was in custody. He claims he was transferred on the eve of his release date intentionally, and that Vienna officials immediately decided to participate in "covering up" the fact that he was incarcerated beyond his release date. He claims he sent requests and grievances daily at Vienna to staff, including Defendant John Barwick (Vienna's Warden) to no avail. (Doc. 78-1 at 9). Plaintiff was informed that Barwick knew of his situation. He faults Barwick for failing to investigate, and/or for allowing or participating in the mishandling and miscalculation of his sentence. He specifically alleges that Barwick was involved with Defendants Wentworth and McGlone's manipulation of his sentence, that ultimately led to a release on June 15, 2023, 30 days after his maximum release date. (Doc. 78-1 at 9-10).

Plaintiff now further alleges that Barwick has trained his employees via an established custom or practice to manipulate dates related to parole or violations. He explains that he believes there was improper backdating with his paperwork, which did not actually align with what happened with his parole outside of prison. Plaintiff goes on to allege that the backdating of various parole dates is an established unconstitutional

practice whereby IDOC superiors either turn a blind eye to, or direct staff to manipulate records to cover up wrongful incarceration. (Doc. 78-1 at 11). He alleges Defendants Wills, Barwick, and the IDOC Director train employees. He also alleges that Barwick failed to cross train anyone that could have process his paperwork while the sole processor at Vienna was on a two-week vacation. Ultimately, Plaintiff alleges that "this is 100% IDOC superior's failing to protect [him] from misconduct." (Doc. 78-1 at 11).

He alleges that the entire time he was on parole, he was subject to unconstitutional actions that hindered his right to life, liberty, and the pursuit of happiness. (Doc. 78-1 at 11).

Plaintiff alleges he has a *Monell* claim about IDOC's policy that requires inmates accused of parole violations to be seen for a parole hearing before release, because this runs the risk of overincarceration. Relatedly, he alleges Wills and Barwick "acquiesced deliberate indifference to this policy and the failure to train or provide their employees with corrective, preventive measures like prescreening inmates to resolve issues that may cause an inmate to be unconstitutional held beyond his sentence." (Doc. 78-1 at 12). He claims the *Monell* claim is also directed at the "superintendent" of prisons. He faults the superintendent for failing to train the wardens and staff about what to do with an inmate in his situation. He includes caselaw about municipal liability, and the possibility that a claim can be established in the absence of a policy based upon a single person's experience. (Doc. 78-1 at 12-13).

Plaintiff discusses a variety of previous cases, and states he is unsure which legal theory might appropriately be used to seek relief for the situation he encountered. (Doc.

78-1 at 14-16). He asks the Court to take supplemental jurisdiction over state law claims, including "superior liability" and a claim for the negligent infliction of emotional distress. (Doc. 78-1 at 16).

He then insists there is no heightened pleading standard for *Monell* liability claims. He alleges that because Anthony Wills is the Warden of Menard, which includes a receiving and classification unit, Wills was responsible for providing sufficient oversight to ensure there was no wrongful incarceration. (Doc. 78-1 at 17). He claims, "even now [Wills] refuses to identify the clinical service/field service personnel that did not report Crump to the parole board or Vienna Correctional." (*Id.*). He argues that he does not agree with the notion a Warden cannot be held liable for day-to-day operations of the prison, but even so his own situation was unique and falls beyond that scope. Plaintiff further alleges that the superintendent of prisons should be held responsible for faulty hiring practices, because both wardens he interacted with exhibited deliberate indifference to his situation. (Doc. 78-1 at 17).

Plaintiff then circles back to a discussion of case law from other circuits about municipal liability, *Monell* claims, and the viability of a claim absent a finding that individual employees violated an inmate's rights. (Doc. 78-1 at 18-19). After discussing case law he states, "[t]he question for the Court is where is the liability for 'government' that falls in the gaps of civil law?" (Doc. 78-1 at 19). Essentially, he contends that his entire experience on parole that led to his reincarceration was part of a larger system that is broken and corrupt. He argues that the defendants have an incentive to reincarcerate parolees so that the overall prison population remains at 85% full. He concludes that this

is why the IDOC Director and wardens cannot be held liable under § 1983. (Doc. 78-1 at 19).

Despite stating that he believes precedent may foreclose his claims, Plaintiff goes on to also cite cases about municipal liability that he believes allow his claim. (Doc. 78-1 at 20). He also cites *Brzowski v. Baldwin*, 2018 WL 4917084 (N.D. Ill. Oct. 9, 2018)[3], a case filed in the Northern District of Illinois about an inmate's overincarceration at Pontiac for the proposition that because another factually similar case exists, it is clear that IDOC has an unconstitutional custom of allowing overincarceration. Plaintiff discusses additional cases both from state court and other District Courts for the proposition that the risk of overincarceration was well known, and thus the defendants' conduct was intentional. He indicates there were too many relevant cases in Lexis Nexis to list them. (Doc. 78-1 at 21). In sum, he alleges that because the problem that afflicted him is not infrequent, then the defendants must be held liable for knowingly allowing him to be incarcerated beyond his maximum release date.

## Analysis

The claims that Plaintiff presents again in his fourth amended complaint are the same or significantly like claims that the Court rejected when reviewing his third amended complaint. (Docs. 62, 63). Plaintiff's biggest obstacle is his repeated efforts to

---

[3] Notably, the *Brzowski* Court dismissed Due Process and Eighth Amendment claims against the Director of IDOC and wardens of prisons the plaintiff had been at for an insufficient showing of personal involvement. Plaintiff also stated that *Brzowski* plaintiff was awarded damages for the prison warden and records supervisor's actions (Doc. 78-1 at 21), but this is an inaccurate summation of the verdict. The Warden was dismissed early in the case, and only the records supervisor was held liable. *Brzowski v. Sigler*, 2021 WL 4283206 (N.D. Ill. Sept. 21, 2021).

hold defendants liable simply because they are supervisors or have authority at large over the IDOC system. As the Court has previously explained, he cannot succeed against defendants such as a Warden or the Director of IDOC either under a theory of supervisory liability or *Monell* in their official capacities as head of the prison or agency. (Doc. 62 at 15-16); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (supervisors cannot be held liable under § 1983 for the misdeeds of their employees); *Bernard v. Baldwin*, 2022 WL 847628 at *7 (N.D. Ill. March 22, 2022) (the IDOC Director in his official capacity cannot be sued for money damages, and may only be subject to a *Monell* claim if there is a request for injunctive relief). He tries in his fourth amended complaint (Doc. 78) to distinguish his latest allegations from these prior issues by couching all his claims as falling within the scope of "individual liability," but merely placing this label on paper does not transform the allegations into something directly attributable to the wardens or Director of IDOC.

The Fourth Amended complaint is also difficult to follow and at times seems contradictory. For example, Plaintiff faults the Wardens and IDOC Director both for failing to train staff and for training staff to do things that violated his rights. He argues there was an explicit policy or custom in place, but also that it was the absence of a policy about parole violators that caused his harm. Plaintiff seems to state that case law explicitly precludes his claims under *Monell* or a theory of respondeat superior liability, but then he also points to cases that he argues support these theories. The many circular and contradictory arguments made it challenging to follow Plaintiff's precise line of argumentation as it relates to the facts of his own case.

On the facts and law presented in Plaintiff's Fourth Amended Complaint (Doc. 78), the Court finds that Plaintiff has not set out a valid basis for a claim against the IDOC Director, Warden Wills or Warden Barwick beyond the scope of the allegations already allowed to proceed against Barwick in his personal capacity. Plaintiff's many allegations about the overall handling of parole, or the handling of parolees who are reincarcerated for a violation rely too heavily on theories of *Monell* and *respondeat superior* liability that simply cannot prevail under controlling precedent because the named defendants are state employees. Plaintiff's citation to many cases about municipal liability is unavailing in this respect because the bounds of liability for municipalities are wholly different than those for state officials.

Plaintiff also argues that the wardens and IDOC Director have failed to train staff, or to implement appropriate measures to guard against inmates languishing beyond their mandatory release date. These theories are unavailing because failure to train or supervise claims are generally only cognizable against municipalities. *Sanville v. McCaughtry*, 266 F.3d 724, 739–40 (7th Cir. 2001) *citing Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (affirming dismissal of failure to train and supervise claims brought against State warden). There is no general supervisory liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks* 555 F.3d at 596. Plaintiff's repeated insistence that the wardens or Director failed to train staff

or to implement safeguards against his situation fall flat because such claims are not cognizable against state officials. *See e.g.*, Sanville, 266 F.3d at 739-40.

Aside from the numerous allegations about harmful policies or customs of top policy makers, Plaintiff also expresses a desire to add the Menard record office supervisor and Menard clinical services supervisor as defendants in this case, but he makes virtually zero mention of these two Doe defendants in the factual narrative. Without personalized allegations about their involvement, Plaintiff cannot proceed against these two. The most detail he provides is in his listing of defendants where he faults these two for failing to set a preliminary or parole board hearing for 24 days while he was at Menard. (Doc. 78-1 at 3). This is essentially the same problem he faulted John Doe 2 (the Menard parole processor) for in earlier iterations of the complaint. It seems that because the Warden of Menard indicated in the John Doe identification process that Plaintiff was never assigned a parole processor (Doc. 77), Plaintiff is now just guessing at who might have been responsible. Guesses and speculation do not provide a sufficient basis for Plaintiff to proceed at this juncture in the case after he has already repeatedly amended his pleadings and has engaged in discovery on unnamed defendants.

In sum, the Court finds that Plaintiff's Fourth Amended complaint does not contain any additional viable claims beyond those already designated to proceed, so he will not be allowed to alter the claims in this case based on this pleading. Plaintiff's Motion for Leave to Amend (Doc. 78) is denied, and no claims or parties will be added to the case.

**Motions**

In Plaintiff's Motion for Miscellaneous Relief (Doc. 72), Plaintiff seeks to add or reinstate a *Monell* claim against the IDOC Director. A motion for miscellaneous relief is not a valid mechanism to amend the complaint, so the Motion will be denied. Additionally, the suggested claim is the same as what the Court analyzed above in relation to the proposed fourth amended complaint. Thus, the Motion (Doc. 72) is denied.

In Plaintiff's Motion to Compel (Doc. 79), he contends that Warden Anthony Wills has an ongoing duty to identify John Doe 2—the Menard Parole processor. He adds that Wills should also identify the proposed additional defendants from the fourth amended complaint (the clinical services supervisor and records department supervisor). In the latest exchange between the parties on John Doe 2—Plaintiff had provided descriptive information, and Wills responded that there was no parole processor assigned to Plaintiff given his short stay at Menard (Doc. 77). Against this backdrop, Warden Wills has discharged his duty of investigating the identifying information that Plaintiff supplied, and he cannot be required to do more.

In Plaintiff's Motion for Remedial Sanctions (Doc. 100), Plaintiff seeks monetary damages against Defendant Wentworth, as well as Assistant Attorney General Jesse Gray. The Motion is not an appropriate way to modify a demand for relief from the complaint, nor does it provide any basis to assess sanctions against opposing counsel. Thus, the Motion (Doc. 100) is denied.

Plaintiff's Motions for Status (Docs. 86, 87, 98, 101) are granted by the issuance of this order. He asks in Document 86 if he needs to respond to the defendants' answer, a

response is not required to an answer, so no action is needed in that regard. In Document 87 he asks for a status update and civil rights template forms. He had not missed anything from the Court or opposing parties at the time the motion was filed, and if he desires copies of template forms he may write the Clerk's Office. Finally, in Document 98 Plaintiff inquired into the status of his amended complaint, and the default by Defendant Wentworth. The amended complaint was reviewed by this Order. Defendant Wentworth will be discussed below. In Document 101, Plaintiff asks for an update and to verify the Court has received various pleadings. The Clerk of Court will be directed to send him a copy of the docket sheet so that Plaintiff can check what he believes he has filed against what the Court has received.

## Defendant Wentworth

On August 19, 2024, Plaintiff moved for a default judgment against Defendant Travis Wentworth, who had missed his answer deadline of July 22, 2024. (Docs. 81, 89). On September 4, 2024, Defendant Wentworth moved for leave to file his answer to the complaint instanter and explained that he accidentally missed the answer deadline. (Doc. 96). Specifically, counsel explains that Wentworth retired from employment with IDOC in March of 2024, and did not realize he did not properly complete paperwork to seek representation by the Attorney General's Office. The Attorney General's Office communicated with him, received a proper request for representation, and is prepared to present an answer and to proceed to the merits of the case. Given that the Court can set aside a default or default judgment for good cause shown under Federal Rule of Civil Procedure 55(c), the Court will deny Plaintiff's Motion (Doc. 89) as moot, and it will allow

Defendant Wentworth to file an answer. The proposed answer is attached to Wentworth's response (Doc. 96-1), but it is counsel's responsibility to file the Answer on the docket sheet.

### Defendant John Doe 2

As the Court mentioned above in the analysis of the fourth amended complaint (Doc. 78) and Plaintiff's motion to compel (Doc. 79), there have been ongoing efforts to identify the Menard Parole Processor—John Doe 2. When the Court allowed Plaintiff to proceed on a claim against John Doe 2, it directed him to provide identifying information to the Court within 30 days, by January 5, 2024. (Doc. 21). Plaintiff's responsive information included a physical description of a counselor that he met with for five minutes upon arrival to Menard (Doc. 27). He also stated that on May 9, 2023, he received a packet indicating he would be released on May 15, 2023, which would have been consistent with the end of his mandatory term of supervised release, and which was standard process for someone being released from Menard. He claims that he believes his overincarceration somehow derived from his "meeting with the counselor which lead to the head admins actions that lead to his extra 30 days in IDOC." (Doc. 27 at 2). He also claimed the Warden would be better able to identify John Doe 2, because he was always on lockdown and only left his cell a few times before being sent to Vienna.

This information suggests that Plaintiff never actually interacted with John Doe 2 face-to-face, and that he has no idea who it is that he is trying to name, or what specific actions they took that caused him harm. The Warden's indication that Plaintiff was only at Menard a short time and was not assigned a parole processor, suggests that the claim

against John Doe 2 is now at an impasse. Plaintiff has not mentioned any additional information that he believes would lead to the identity of John Doe 2. Plaintiff shall have one final opportunity to provide the Court and Warden Wills with any additional identifying information he has related to the person associated with the allegations against John Doe 2. Plaintiff must supply any such information in a notice filed within 30 days of this order. Failure to provide additional information may lead to the dismissal of John Doe 2 without prejudice.

## Disposition

**IT IS HEREBY ORDERED THAT,** Plaintiff's Motion to Amend (Doc. 78) is **DENIED** because the proposed Fourth Amended Complaint (Doc. 78-1) does not present any additional sufficient claims to proceed against the defendants. Plaintiff's Motion for Miscellaneous Relief (Doc. 72), which was an improper attempt to amend his complaint is also **DENIED**.

Plaintiff's Motion to Compel (Doc. 79) is **DENIED** because the Court finds that Anthony Wills has provided sufficiently responsive information about John Doe 2. Defendant Wills' Motion for an Extension (Doc. 76) to file the responsive John Doe 2 information is **GRANTED** instanter as he filed the information within 3 days of filing the motion and caused no significant delay. Plaintiff shall have **30 days** to provide any final information that may be used to identify this individual. Failure to file a responsive notice within 30 days will result in the dismissal of John Doe 2 without prejudice.

Plaintiff's Motion for Remedial Sanctions (Doc. 100) is DENIED because it is not a proper way to modify the demand for relief against Defendant Wentworth and it provides no valid basis to sanction opposing counsel.

Plaintiff's Motions for Status (Docs. 86, 87, 98, 101) are **GRANTED** by the issuance of this Order as discussed above.

Plaintiff's Motion for a Default Judgment (Doc. 89) against Defendant Wentworth is **DENIED**, and Wentworth's counsel **shall immediately file his answer on the docket sheet** per Local Rule 15.1(a)(3).

Plaintiff's Motion for Summary Judgment (Doc. 88) is **DENIED**.  Plaintiff contends in this one-page document that he is entitled to immediate judgment in his favor because he has established a *prima facie* case of overincarceration, but his motion is not supported by evidence any, and it is premature.

**IT IS SO ORDERED.**

Dated: October 29, 2024

_____
DAVID W. DUGAN
United States District Judge